IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Larry Darnell Belcher, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-1401 (RDA/WEF) |
| | ) | |
| Ms. McClure, *et al.*, | ) | |
|     Defendants. | ) | |

## ORDER

Larry Darnell Belcher ("Plaintiff" or "Belcher"), a Virginia inmate proceeding *pro se*, has filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights. Dkt. No. 1. Belcher seeks injunctive and monetary relief in the amount of $230,000. Because Belcher is a prisoner, however, the Court must screen his complaint to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. See 28 U.S.C. § 1915A. [1]

## I. STANDARD OF REVIEW

Pursuant to § 1915A, this Court must dismiss any claims based upon "'an indisputably meritless legal theory,'" or claims where the "factual contentions are clearly baseless." *Clay v.*

---

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

> > (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

> > (2) seeks monetary relief from a defendant who is immune from such relief.

*Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

In order to screen a complaint, however, a plaintiff must present a coherent, comprehensible, and intelligible document. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort").

## II. COMPLAINT

On February 2, 2025, while detained at the Coffeewood Correctional Center, in Mitchells, Virginia, Belcher alleges that Defendant McClure, the Warden's Secretary, humiliated him when she spoke to him in a rude, headstrong, oppressive, disrespectful, and mean manner in ordering

him to stand for count. Dkt. No. 1 at 4 and 5.[2] Belcher's left leg was amputated from his left foot through half way up his calf, and the toes on his right foot were also amputated due to his diabetes. Dkt. No. 1-2 at 4. Moving or standing causes him great pain and difficulty in his left leg. *Id.* Defendant McLure ordered him to "stand up for count and move to [his] wheelchair," instead of letting him remain seated in his bed. Dkt. No. 1 at 4.

On February 2, 2025, Belcher filled a written complaint, No. CWCC-25-WRI-00228, alleging that Defendant McClure had humiliated him by demanding he stand for count and move to his wheelchair. Dkt. No. 1-2 at 4. Belcher's "grievance is not about [him] being in [his] wheelchair for count but allowing basic human dignity." *Id.* at 2. On February 10, 2025, Defendant Barnes responded to the complaint stating that Belcher "must be at the end of [his] bed like every other inmate," which is satisfied by sitting in your wheelchair. *Id.* While Coffeewood "understood [Belcher's] condition [he is] still subject to all the rules of count." *Id.*

On March 3, 2025, Belcher appealed to the warden, Defendant Davis. Defendant Davis responded stating that "staff related issues would not be discussed with [him] but would be addressed through the appropriate channels. As you state, all staff and inmates are expected to treat each other with respect even when addressing issues that may arise." *Id.* at 2. On April 17, 225, Defendant Davis found that "the investigation reveal[ed] that [Belcher had] been informed of the policy and rules regarding the requirements for count" and that Belcher had "not receive[d] any form of disciplinary action resulting from this incident nor is there substantiated loss or harm as a

---

[2] Belcher is now detained at the State Farm Correctional Center, in State Farm, Virginia. *Id.* at 1.

result of this claim." *Id.* Defendant Davis found that there was "no evidence that Coffeewood Correctional Center or any staff member of CWCC has violated OP 135.2," OP 135.2-Rules of Conduct Governing Employees Relationships with Offenders. *Id.* Belcher sought a Level II appeal to the Regional Administrator, who upheld Defendant Davis's Level I response on May 2, 2025. *Id.* at 1.

Belcher alleges Defendants' conduct: 1) constituted deliberate indifference and cruel and unusual conditions that caused him wanton and unnecessary infliction of pain and subjected him to an excessive risk of harm, which violated his rights; 2) discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* ("ADA") because he was required to stand and move to his wheelchair; 3) violated the Nelson Mandela Rules and the United Nations General Assembly resolution, the Universal Declaration of Human Rights; and 4) violated Virginia Department of Corrections' Policy. Dkt. No. 1 at 7, 8-10, 11-12, 15-19.

## III. DISCUSSION

After reviewing the complaint, it is clear that Belcher has failed to state a claim upon which relief can be granted. As a preliminary matter, Defendants Barnes and Davis were not involved in the February 2, 2025 incident. Absent personal involvement, Belcher has failed to state a claim against either Defendant Barnes or Defendant Davis regarding the February 2, 2025 incident, and each will be dismissed with regard to Belcher's February 2, 2025 claims. *See Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) ("In the § 1983 context . . . a plaintiff [must] 'plead that each Government official defendant, through the official's *own individual actions*, has violated the Constitution.'" (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009))).

*Deliberate Indifference*. To state an Eighth Amendment claim against a defendant that a state actor has been "deliberately indifferent," Belcher must satisfy a subjective test that requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). He "must show that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and drew that inference.'" *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 211 (4th Cir. 2017) (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks and alterations omitted)); *cf. Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

Here, there is no allegation that the Defendant McClure was aware that requiring Belcher to stand and move to his wheelchair for count would cause him any pain. There is likewise no allegation that the medical department had deemed Belcher unable to stand, even briefly, or that he was unable to move from his bed to his wheelchair to comply with the rules of VDOC procedures. Further, there is no allegation that anyone had given Belcher permission to deviate from count procedure. Belcher has not stated a deliberate indifference claim, and this claim will be dismissed.

*ADA*. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

5

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (quoting 42 U.S.C. § 12132). A state prison is a "public entity" for purposes of Title II of the ADA. *See United States v. Georgia*, 546 U.S. 151, 154 (2006). To state a claim under the ADA, a plaintiff must allege facts plausibly asserting that:

> (1) [he or] she has a disability, (2) [he or] she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) [he or] she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his or] her disability.

*Constantine*, 411 F.3d at 498 (citations omitted). "A plaintiff is 'qualified' if [he or] she is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. § 12131(2)). The Court assumes for purposes of this screening order that Belcher has a disability. Belcher, however, does not identify the public service, program, or activity that he is entitled to receive. Instead, he simply complains that he was ordered to stand and move to his wheel chair for count. Likewise, he does not allege facts to establish that he was denied the right to participate in or denied the benefits of a service, program, or activity, or otherwise discriminated against, on the basis of his disability. Again, he alleges only that unnamed persons at other VDOC facilities are allowed to remain in their bunks during count.

Belcher's ADA claim has additional deficiencies. First, the ADA does not provide a cause of action against defendants in their individual capacities. *See Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir. 2014); *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010). Second, the ADA

6

provides a private right of action for injunctive relief but no right of action for monetary relief. 42 U.S.C. § 12188; *see also Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief."). Injunctive relief, however, "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

*Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016).

Finally, injunctive relief is not available because Belcher was transferred from Coffeewood Correctional Center where the alleged violation occurred to a different VDOC facility, State Farm Correctional Center. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there.").

*The Nelson Mandela Rules and the United Nations General Assembly resolution, the Universal Declaration of Human Rights.* With respect to the alleged violation of the Nelson Mandela Rules ("NMR"), Belcher has failed to state a claim. In December 2015, the United Nations General Assembly adopted the revised Standard Minimum Rules for the Treatment of Prisoners, known as the NMR, which "establish[es] basic principles and minimum standards for the treatment of prisoners in order to ensure that the human rights of all incarcerated persons are respected[.]" Jamelia N. Morgan, *Caged In: The Devastating Harms of Solitary Confinement on Prisoners With Physical Disabilities*, 24 Buff. Hum. Rts. L. Rev. 81, 156 (2018).[3] However, the NMR are not a treaty, are not binding on the United States, and do not purport to serve as a source

---

[3] *See United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules),* UN. General Assembly (70th sess. : 2015-2016) (https://digitallibrary.un.org/record/816764?ln=en&v=pdf) (adopted December 17, 2015.

of private rights. *See Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010) ("Customary international law is not a source of judicially enforceable private rights in the absence of a statute conferring jurisdiction over such claims." (citing *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1174 n.1 (D.C. Cir. 1994) ("While it is true that 'international law is part of our law,' it is also our law that a federal court is not competent to hear a claim arising under international law absent a statute granting such jurisdiction." (citation omitted))); *see also Sosa v. Alvarez-Machain,* 542 U.S. 692, 720 (2004) ("'[O]ffences against this law of nations are principally incident to whole states or nations,' and not individuals seeking relief in court." (quoting Blackstone, 4 Commentaries 68) (alteration omitted)). Plaintiff cannot state a claim based on an alleged violation of the NMR.

For similar reasons, the United Nations General Assembly resolution, the Universal Declaration of Human Rights ("Declaration"), is not a basis for a claim. The Universal Declaration of Human Rights does not provide a private right of action in federal courts. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004); *Blackstock v. Hartsville YMCA*, 2017 WL 3530524, at \*2 (D.S.C. July 28, 2017) ("The Universal Declaration of Human Rights, which is a United Nations General Assembly resolution, is only a statement of principles. It is not a treaty or international agreement that would impose legal obligations on the United States or its citizens, and it does not provide a private right of action for individual litigants in federal court." (citations omitted)), *R & R adopted*, 2017 WL 3500178 (D.S.C. Aug. 16, 2017).[4] Belcher has not stated a claim upon which

---

[4] *See also Sosa*, 542 U.S. at 734 ("[T]he Declaration does not of its own force impose obligations as a matter of international law."); *Chen v. Ashcroft*, 85 F .App'x 700, 705 (10th Cir. 2004) ("The Universal Declaration of Human Rights is merely a resolution of the United Nations

relief can be granted under either the NMR or the Declaration, and those claims are dismissed.

*VDOC Policy*. To the extent Plaintiff asserts an Eighth Amendment claim premised upon a violation of VDOC Operating Procedures or Rules of Conduct policies, his claim has no merit. A state official's failure to abide by state procedural laws or regulations does not present a federal due process issue, *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990), and is, therefore, not actionable under § 1983. "'[T]he mere fact that a state agency violates its own procedures does not *ipso facto* mean that it has contravened federal due process requirements.'" *Garraghty v. Corn. of Va., Dep't of Corr.*, 52 F.3d 1274, 1285 (4th Cir. 1995) (quoting *Morris v. City of Danville*, 744 F.2d 1041, 1048 n.9 (4th Cir. 1984)). Any claim based upon an alleged violation of a DOC policy is dismissed.

*Grievances*. To establish that Defendants Barnes and Davis are liable in their personal capacity, Belcher

> must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiffs rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). That is, the official's "own individual actions" must have "violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Importantly, *mere knowledge* of such a deprivation does not suffice. *Wright*, 766 F.2d at 850.

---

. . . [and is] simply a multinational declaration[] [that is not] binding on the United States or on this court."); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 259 (2d Cir. 2003) ("The Universal Declaration of Human Rights is a resolution of the United Nations General Assembly and, thus, merely an aspirational document that does not bind the United States. As such, the Declaration's provisions do not create a right secured by federal law that, if violated, is actionable under 42 U.S.C. § 1983."); *Moore v. Solomon*, 2016 WL 6272406, at *3 n.3 (W.D.N.C. Oct. 25, 2016) ("The Universal Declaration of Human Rights, the Declaration of Human Rights does not create a private right of action." (citing *Sosa*, 542 U.S. at 734; *Minford v. Berks Cnty. Inc.*, 2014 WL 6969600, at *4 (E.D. Pa. Dec. 9, 2014) ("[T]he Universal Declaration of Human Rights as adopted by the United Nations is a 'non-binding declaration that provides no private rights of action.'"))), *aff'd*, 688 F. App'x 196 (4th Cir. 2017).

*Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (emphasis added). At best, Belcher's allegations establish Defendants Barnes and Davis were involved in the grievance process and had "mere knowledge" of the alleged deprivation. "Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Consequently, "[o]nly persons who cause or participate in the violations are responsible . . . . Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (citations omitted); *see Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim"); *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) ("The 'denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" (citation omitted)); *cf. Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding prisoner had no claim for "failure to investigate" a grievance because there was no "protected liberty interest" in having a grievance "resolved to his satisfaction").[5] The allegations in the complaint establish that neither Defendant Barnes nor Defendant Davis were personally involved in the alleged incident on February 2, 2025. Accordingly, the complaint will be dismissed for failure to state a claim. Because

---

[5] As the Seventh Circuit observed, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *George*, 507 F.3d at 609-10; *see also Brown v. Va. Dep't of Corr.*, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *cf. Chamberlain v. Clarke*, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non-starter").

Belcher is an inmate, however, he will be allowed to file an amended complaint.

The amended complaint *must* separately number each claim that Plaintiff is seeking to raise by letter or number. Each subsequent claim shall be designated by the appropriate letter or number. Within each claim, Belcher shall identify the federal right he alleges has been violated. As part of each claim, in separately numbered paragraphs, Belcher will name the defendant or defendants associated with the claim, provide the facts associated with claim, and include the facts that establish the acts or failure to act that implicates each defendant named. In setting forth the specifics and facts of each claim, plaintiff should use defendants' names rather than a generic designation of "defendants," which would assist in clarifying the matter and allow a defendant to respond. The facts *must* include dates as to when matters occurred.

In setting forth the facts in his amended complaint, Belcher should refrain from presenting arguments and editorializing, as both of these inhibit the ability to comprehend the nature of the claim Plaintiff is attempting to present. Plaintiff is expressly advised that the amended complaint supersedes the original complaint. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (as a general rule an amended complaint supersedes "the original, the latter being treated thereafter as non-existent" (citation omitted)).

Accordingly, it is hereby

ORDERED that Defendants McClure, Barnes, and Davis are each DISMISSED WITHOUT PREJUDICE because Plaintiff has failed to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2); and it is

FURTHER ORDERED that Plaintiff particularize and amend his complaint within thirty (30) days of the date of this Order using the enclosed standardized §1983 complaint form by (i)

11

naming every person he wishes to include as a defendant and (ii) for each claim, submitting a short, detailed statement of background facts that describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, and the remedies sought. Plaintiff must include his civil action number, **1:25-cv-1401 (RDA/WEF)**, on the first page of his amended complaint. Plaintiff is advised that this amended complaint will serve as the sole complaint in this civil action; and it is

FURTHER ORDERED that Plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to Plaintiff.

It is SO ORDERED.

Alexandria, Virginia
June 17, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge